**Larry CADDELL d/b/a R–X Wholesale Company, Appellant,**

v.

**STATE of Oklahoma ex rel. DEPARTMENT OF HEALTH, Appellee.**

No. 84716.

Court of Appeals of Oklahoma, Division No. 1.

April 11, 1995.

---

20. *Johnson,* 823 P.2d at 373; 22 O.S.1991, §§ 1083, 1084.

David B. Dykeman, Oklahoma City, for appellant.

Thomas E. Prince, Oklahoma City, for appellee.

### MEMORANDUM OPINION

CARL B. JONES, Judge:

In December, 1990, Appellant Larry Caddell was awarded a state "00" contract to provide DPT[1] vaccine to state agencies. The Office of Public Affairs ["OPA"] makes annual and semi-annual "00" contracts to enable all state agencies to acquire commonly used items from the contracting vendor without the necessity of competitive bidding for each purchase.

The contract period for Caddell's contract extended through September 30, 1991. Yet, as Caddell discovered, the Oklahoma Department of Health ["ODH"] ordered DPT vaccine from other sources four times during 1991. One order, on September 17, 1991, was approved in advance by the Director of the Central Purchasing Division of OPA under the provisions of 74 O.S.1991 § 85.12(B), and specifically subparagraph (22) of that subsection:

> The following acquisitions shall not be included within the purview of the Oklahoma Central Purchasing Act, Section 85.1 et seq. of this title:
>
> *   *   *   *   *   *
>
> (22) Purchases of products available to an agency through a General Services Administration contract or other federal contract if the item is on current state contract, and the terms of such contract are more favorable to the agency than the terms of a state contract for the same products as determined by the State Purchasing Director;

ODH placed the other orders directly to the Centers for Disease Control ["CDC"], which acquired the vaccine from a federal contract vendor.

The orders from CDC were made pursuant to a federal grant for childhood immunization programs. ODH applied for and received a grant from the federal Department of Health and Human Services to assist in immunizing schoolchildren against various childhood diseases. Part of the grant, for program operations, entered the state treasury. That portion of the grant money is not at issue here. The much greater remaining portion of the grant, designated as "direct assistance" money, went to CDC. ODH exercised its option under federal law to take vaccine in lieu of the direct assistance grant money; CDC then debited the balance of the available direct assistance funds.

It is undisputed that the pre-approved direct purchase of vaccine from the federal vendor saved the state over $14,000 from what ODH would have spent to purchase the vaccine from Caddell. Moreover, none of the federal direct assistance grant funds held by CDC ever entered the Oklahoma state treasury, but instead were at all times in the possession and under the control of CDC. ODH received only vaccine purchased by CDC, and not the funds needed to buy the vaccine.

Caddell commenced this action against ODH seeking damages for breach of contract. The trial court granted summary judgment in favor of ODH, and Caddell appeals.

As conceived by Caddell, this case reduces to a single issue. He concedes that ODH obtained the necessary approval for its direct purchase of vaccine from the federal contract vendor, but he contends that ODH should also have obtained prior approval for vaccine ordered from CDC. In the absence of such approval, Caddell argues that ODH violated the Central Purchasing Act when it acquired the vaccine from CDC, and thereby breached the exclusive contract he had with the state.

ODH argues the CDC orders were not purchases, but instead were gifts from the federal government, expressly exempted from the reach of the Central Purchasing Act by 74 O.S.1991 § 85.4(A), which states in part, "The provisions of the [Act] shall not preclude the acceptance of gifts and donations in the manner now authorized by law . . ." [footnote omitted]. ODH observes that the State Commissioner of Health is express-

---

1. Acronym for "diphtheria, pertussis, and tetanus."

ly authorized by state law to "accept, use, disburse and administer grants, allotments, gifts ... and other monies and property offered or given to the State Department of Health ... by any agency of the federal government ..." 63 O.S.1991 § 1–106(b)(11). The trial court accepted this argument in rendering judgment for ODH.

Caddell disputes the characterization of the federal direct assistance grant as a gift by pointing out that the grant was accompanied by numerous conditions (some of them imposed by federal regulations[2]) which required ODH, among other things, to devise and implement appropriate programs for delivering the vaccine, promoting childhood immunization, ensuring compliance with existing immunization laws and regulations, monitoring distribution and usage of the vaccine, and advising parents of the risks associated with the vaccine, and to annually determine immunization levels of the affected schoolchild population, and to make periodic reports to the federal Department of Health and Human Services. Considering these extensive requirements for receiving the grant, and the resources required to comply with them, Caddell argues that, in fact, the state "purchased" the vaccine from CDC just as surely as if it had used money from the state treasury.

■ The Central Purchasing Act was intended to protect the people of Oklahoma by promoting economy in government and reducing the likelihood of fraud. *Indiana National Bank v. State of Oklahoma*, 857 P.2d 53, 60 (Okla.1993); *State ex rel. Cartwright v. Tidmore*, 674 P.2d 14, 16 (Okla.1983). The Act applies to all "acquisitions" by state agencies, which term is defined very broadly to include "every means by which a state agency obtains for its use any materials, supplies, service[s] or equipment covered by [the Act] ..." 74 O.S.1991 § 85.2(3).

■ Notwithstanding the breadth of § 85.2(3), we see no compelling reason why ODH's orders of vaccine from CDC should be subject to prior approval by the state Purchasing Director. While we question ODH's analogy to the law of gifts, we do not question the underlying premise of its argument: that the federal direct assistance grant falls within the spirit, if not precisely within the letter, of the exemption in 74 O.S.1991 § 85.4(A). Products obtained without expenditure of funds from the state treasury, but rather by debiting some "account" created from a federal direct assistance grant, should not be subjected to the additional restrictions which the state Central Purchasing Act imposes. The federal government established this "account" for the benefit of qualifying agencies such as ODH.[3] The funds "spent" by ODH for vaccine ordered from CDC were not then, and never were, state funds—those funds were neither generated at the state level nor disbursed through the state treasury. Clearly, by taking advantage of the federal direct assistance grant funds to acquire DPT vaccine for use in this state, ODH served a very real public interest.

We therefore hold that the trial court judgment in favor of ODH must be affirmed.

AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

2. The Secretary of the federal Department of Health and Human Services is authorized by 42 U.S.C. § 247b to make project grants to states, political subdivisions, and other public entities to assist in meeting the costs of establishing and maintaining preventive health service programs. Regulations governing application for and administration of such grants are published at 42 C.F.R., subparts 51a and 51b, and elsewhere as indicated in 42 C.F.R. § 51b.105. Regulations governing grants for programs to immunize children against vaccine preventable diseases are set out in 42 C.F.R. §§ 51b.201–.206. The conditions cited by Caddell were published with the announcement of such grants to official state health agencies at 52 Fed.Reg. 16451–01 (1987).

3. 42 C.F.R. § 51b.203; *see, generally,* 42 C.F.R. §§ 51b.201–206.